**LOCAL 2195, LUMBER AND SAWMILL WORKERS UNION, Plaintiff,**

v.

**INTERNATIONAL PAPER CO., a New York Corporation, Defendant.**

**Civ. No. 79–595.**

United States District Court,
D. Oregon.

May 15, 1980.

Bernard Jolles, Jolles, Sokol & Bernstein, P.C., Portland, Or., for Plaintiff.

Richard F. Liebman, Spears, Lubersky, Campbell & Bledsoe, Portland, Or., for defendant.

## OPINION

REDDEN, Judge:

Plaintiff, Local 2195, Lumber and Sawmill Workers Union (Union), brought this action against defendant, International Paper Co. (International), for breach of a collective bargaining agreement (Agreement).

The Union is a labor organization within the meaning of the Labor Management Relations Act (Act), 29 U.S.C. § 152(5), and is the duly certified bargaining representative for all production and maintenance workers at International's plywood plant.

International is a corporation operating a plywood plant in Douglas County, Oregon, and is an employer within the meaning of the Act.

There is an agreement between the parties, signed June 1, 1977, which provides in Article IX, section 2 that:

> All new employees shall serve a thirty (30) day probationary period before gaining any seniority rights. After the employee has served the thirty (30) day probationary period, seniority will date back to the date of hiring. . . .

Article XIII of the Agreement provides that:

> 1. The Company has the right to hire and subject to Clause 2 and 3 below, the right to suspend or discharge any employee for just cause.
>
> 2. In cases where immediate action is required the employee concerned will be suspended pending announcement by the Company Plant Committee to the Union Plant Committee at a joint meeting of the final action the Company plans to take.
>
> 3. Otherwise an employee shall receive a written warning slip prior to any suspension or discharge action. Such warning slips shall clearly state the basis for the warning and provide therein a space where the employee must sign acknowl-

edging receipt of the warning slip, although the person does not necessarily accept that the warning issued is proper. The warning slip shall be issued in triplicate, with one copy being distributed each to the employee, the departmental shop steward and the Company. If the written warning is appealed through the grievance procedure, the only evidence which will be considered by the parties is that which is directly relevant to the determination of the violation in question.

4. Thereafter, if any employee claims to have been unjustly suspended or discharged for the same cause as stated in the written warning slip issued to that individual, such person shall, within two (2) working days, refer the matter directly to the Plant Committee, who may immediately take the matter up with the Company for prompt settlement.

If it is found that the employee has been unjustly suspended or discharged the employee shall be reinstated without loss of time otherwise the discharge will stand. The Plant Committee will be notified in writing stating the reason for any suspension or discharge action.

5. Reporting for Work. It is an obligation of each employee covered by this Agreement to make reasonable effort to notify the Company when such person is unable to report for work on schedule or other bona fide reasons for being absent.

Failure to make such reasonable effort, to notify the Company will subject the offending employee to appropriate disciplinary action, as may be agreed upon by the Company and Union Plant Committee.

On October 17, 1977, International discharged Coleen D. Bailey. At the time of her discharge, Bailey was a probationary employee under the Agreement. She started work on September 26, 1977.

On October 26, 1979, International discharged William Knuutila. At the time of his discharge, Knuutila was also a probationary employee under the Agreement. He started work on October 1, 1979.

The Union contends that: (1) The Agreement provides that International can not discharge any employee without just cause; and (2) Bailey and Knuutila were discharged without just cause. The Union seeks back pay and reinstatement of the employees.

International contends that: (1) The Agreement and the past practices of the parties allows the termination of probationary employees without just cause; and (2) both Bailey and Knuutila were discharged for just cause and such actions were not arbitrary, capricious or discriminatory. International also contends that this court lacks the authority to order reinstatement.

■ I agree with the Union's construction of the Agreement. The Agreement requires just cause before International may discharge any employee. Bailey and Knuutila were discharged without just cause in violation of the Agreement.

International contends that under Article IX of the Agreement, probationary employees can be terminated at will. This article is silent on International's right to terminate probationary employees; it merely denies seniority rights for the thirty day probationary period.

Article XIII, section 1 of the Agreement gives International "the right to hire and . . . the right to suspend or discharge *any employee for just cause.*" (Emphasis added). This section is not ambiguous; no distinction is made between regular employees and probationary employees. Therefore, it includes probationary employees.

An examination of other articles in the Agreement reinforces this conclusion.

ARTICLE XVI-Holidays

\* \* \*

5. *An employee* is qualified for holiday pay if the employee meets all the following conditions:

(a) The person's last hiring date was at least thirty (30) calendar days prior to the paid holiday, and

(b) the person worked the last regularly scheduled work day before the holiday, unless an absence was excused in writing by the Company.

\* \* \*

ARTICLE XVIII-Jury Duty

Any *regular employee* who is required to perform any jury duty, including Grand Jury Duty, will be entitled to reimbursement at the straight time hourly rate of that person's regular job, including shift differential if assigned to swing or graveyard shift, for the hours necessarily lost as a result of serving on the jury; provided, however, that such reimbursement shall not exceed eight (8) hours per day or forty (40) hours per week, less pay received for jury duty.
\* \* \*

ARTICLE XIX-Funeral Leave

1. When death occurs to a member of *an employee's* immediate family the employee shall be granted the necessary time off for the purpose of attending the funeral.
\* \* \* (Emphasis added).

It is clear that when the parties wanted to isolate the probationary employees for different treatment, they used appropriate terms.

International contends that past practices of the parties support their position, but this contention is without merit.

■ Past practices may be useful in the interpretation of ambiguous contract provisions. *E. g., Exxon Chemical Co.*, 68 Lab. Arb. 362, 366–67 (Bailey, 1977). Their consideration, however, is inappropriate where the language of the agreement is clear. *Id.* The testimony of International's witness, Joe Bennett, was heard on this point. He is the plant superintendent and was formerly president of the Union. He stated that he did not believe any probationary employee had rights and recalled no instance where the Union had represented such employee under the particular circumstances. On cross examination, however, he acknowledged that the Union had never been asked by such an employee for representation and admitted that he knew of no past practices.

■ International next contends that Bailey and Knuutila were discharged for just cause. Bailey was allegedly terminated for absenteeism and poor work performance. Knuutila was terminated for poor work performance.

Article XIII of the Agreement provides for progressive discipline which includes a written notice, hearings and discharge or suspension for the same reason stated in the warning letter. There is no dispute that these procedures were not followed. However, the parties agree that International sent letters (Def. Exh. 11) to the Union at the end of each month; these letters set forth the name of each employee who was hired, discharged or quit.

■ The Union contends that the failure to follow the progressive discipline procedures in the Agreement establishes the absence of just cause. International contends that this issue was never raised in the pretrial order; even if this issue could be raised now, it does not establish the absence of just cause.

Fed.R.Civ.P. 15(b) provides that "the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits . . . ." There is no dispute that the progressive discipline procedures were not followed here. International was given the opportunity to submit, and did submit all existing evidence of any progressive discipline procedures. International submitted the letters referred to above (Def. Exh. 11). They do not, however, establish compliance with Article XIII. International was not prejudiced by the Union's late contention, and presentation of the merits was served by permitting the amendment.

The failure to follow the progressive discipline procedures in the Agreement, despite allegedly poor work performance or absenteeism, precludes discharge. *American Petrofina Co.*, 61 Lab.Arb. 861, 863 (Marlatt, 1973); *Mason County Road Comm'n*, 70 Lab.Arb. 234, 240 (Allen, 1978); see *Electra-Gas Appliance Corp.*, 64 Lab. Arb. 1185 (Rinaldo, 1975).

The Union is entitled, therefore, to back pay for Bailey and Knuutila, less any money received from unemployment compensation or earnings at other jobs.

The Union also seeks reinstatement of the employees. It is the law of this District that "the equitable remedy of reinstatement is barred by the prohibition of injunctions in labor disputes established by the Clayton Act." *Local 2750 v. Rosboro Lumber Co.*, 97 L.R.R.M. 2933 (D.Or. 1978), *appeal pending*, No. 78–2251, 9th Cir., March 20, 1978.

The Union shall submit evidence within 10 days on the issue of back pay for the employees. International may respond to this evidence within 7 days.

This opinion shall constitute findings of fact and conclusions of law under Fed.R. Civ.P. 52(a). The Union shall submit a proposed judgment order consistent with this opinion.